672 So.2d 988 (1996)
STATE of Louisiana
v.
Thank Vu NGUYEN.
No. 95-KA-1055.
Court of Appeal of Louisiana, Fifth Circuit.
March 26, 1996.
*990 John M. Mamoulidas, District Attorney, Terry M. Boudreaux, Assistant D.A. & Leigh Ann Wall, Gretna, for plaintiff-appellee.
Bruce G. Whitaker, Gretna, for defendant-appellant.
Before GAUDIN, C.J., and DUFRESNE, and DALEY, JJ.
DUFRESNE, Judge.
The defendant was charged by bill of information with two counts of armed robbery in violation of LSA-R.S. 14:64 (counts one and two) and eight counts of attempted armed robbery in violation of LSA-R.S. 14:27 and 14:64 (counts three through ten). Following subsequent amendments to the bill of information, the defendant proceeded to trial on four counts of armed robbery (counts one, two, four and seven) and six counts of attempted armed robbery (counts three, five, six, eight, nine and ten); however, prior to the commencement of trial, the trial court denied the defendant's motion to suppress evidence. The trial court subsequently denied the defendant's motion to suppress identification and at the conclusion of trial, the jury returned with a verdict of guilty as charged on all counts. The trial court sentenced the defendant to 99 years at hard labor without benefit of parole, probation or suspension of sentence on each of the four armed robbery convictions and 40 years at hard labor without benefit of parole, probation or suspension of sentence on each of the six attempted armed robbery convictions. The court ordered all of the sentences to run concurrently and gave the defendant credit for time served. That same day, the defendant filed a motion to reconsider sentence which the trial court subsequently denied.

FACTS
On the evening of December 2, 1994, the defendant and Billy Pham entered Natural Nails, a manicure establishment on Manhattan Boulevard in Harvey, Louisiana. At that time the business was occupied by the owner, Kiem Pham, employees, Diem Dang, Thuy Linh Phan, Grace Nguyen and Van Nguyen, and customers, Bessie Griffin and her two daughters, five-year-old Latricia Griffin and ten-year-old Arion Griffin, Roylene Kornovich and Angela Wilson.
The defendant was wielding a sawed-off shotgun which he "pumped" and placed to Latricia Griffin's head and when Arion Griffin approached her sister, the gun "slid" into her head. The defendant then ordered everyone to proceed to the rear of the business.
After everyone was herded into a rear bathroom, the defendant and Billy Pham forced the owner, Kiem Pham, to lay down on the floor. The defendant then "stuck" the gun in the back of Kiem Pham's head and demanded that "everybody give up their jewelry." *991 The defendant took between $400.00 and $500.00 from Kiem Pham and Bessie Griffin surrendered her bracelet. After the defendant and Billy Pham tied Kiem Pham's hands behind his back with duct tape, they forced him back into the bathroom. The defendant and Billy Pham then forced Diem Dang, Roylene Kornovich, Grace Nguyen, Van Nguyen, Thuy Linh Phan and Angela Wilson out of the bathroom one-by-one and tied their hands behind their backs. At that time, the defendant and Billy Pham took some currency from Grace Nguyen and a bracelet from Van Nguyen.
Thereafter, John Tran, the nephew of the owner of Natural Nails, pulled up in front of the business. Because he saw no one inside the business except for two males who were tying up a female, Tran immediately headed for a nearby phone to call the police. Having observed Tran's vehicle, the defendant and Billy Pham fled the scene leaving Bessie Griffin and her two daughters unbound.

ASSIGNMENT OF ERROR NUMBER ONE
The evidence was insufficient to support the verdict on the attempted armed robbery counts, counts 3, 5, 6, 8, 9 and 10.

DISCUSSION
The defendant contends that the evidence was insufficient to support the convictions of attempted armed robbery of Diem Dang, Thuy Linh Phan, Roylene Kornovich, Latricia Griffin, Arion Griffin and Angela Wilson. Specifically, the defendant argues that the defendant lacked the requisite specific intent to rob each of the above victims.
In evaluating the sufficiency of the evidence, the standard to be used by the appellate court is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La. 1988); State v. DiLosa, 529 So.2d 14 (La. App. 5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989).
LSA-R.S. 14:64 defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
An attempt is defined in LSA-R.S. 14:27(A) as follows:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Thus, to prove an attempted armed robbery, the State had to prove that the defendant 1) had a specific intent to commit the crime of armed robbery, and 2) did an act for the purpose of and tending directly toward the commission of the crime of armed robbery; however, the act of taking need not be established.
Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Since specific intent is a state of mind, it need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. Specific intent is an ultimate legal conclusion to be resolved by the trier of fact. See State v. Graham, 420 So.2d 1126 (La. 1982). In the instant case, the evidence was sufficient to support the convictions of attempted armed robbery. The evidence produced at trial established that the defendant entered the business armed with a shotgun, herded all of the occupants into a bathroom and demanded the surrender of their jewelry. Accordingly, the evidence when viewed in a light most favorable to the prosecution was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that the defendant had the specific intent to commit armed robbery of each of the above victims and in fact did an act for the purpose *992 of and tending directly toward those armed robberies.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
The trial court erred in denying appellant's motion to suppress the identification.

DISCUSSION
The defendant contends that the trial court erred in denying the motion to suppress identification. Specifically, the defendant argues that the identification procedure was suggestive considering that "it was only when the various victims/witnesses saw appellant [at a pre-trial motion] in prison garb hand cuffed to his co-defendant, and seated with other prisoners, none of the others whom it is likely were of oriental descent were they able to make an identification."
While attending a pre-trial motion, Diem Dang, Arion Griffin, Latricia Griffin, Bessie Griffin, Grace Nguyen, Van Nguyen, Kiem Pham, Thuy Linh Phan and Angela Wilson observed the defendant. At that time, the defendant was dressed in prison attire and handcuffed to his accomplice, Billy Pham, who was also in prison attire; and they were seated in the jury box with a group of prisoners who were similarly dressed.
Prior to the commencement of trial, defense counsel requested a determination on the motion to suppress identification noting the viewing of the defendant at the pre-trial motion; however, the trial court refused stating the following:
... What I intend to do is to send the Jury out and allow defense counsel to ask, uh, the victims whether or not they were present at some pretrial date in this courtroom and whether something took place that effected [sic] their ability to identify the defendant.
Thereafter, during the state's case, a hearing on the motion to suppress identification was conducted before each of the above victims testified, except Latricia Griffin who was declared incompetent to testify. The trial court denied motions as to each victim.
A defendant who seeks to suppress an identification must prove that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Lowenfield, 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986), rehearing denied, 478 U.S. 1032, 107 S.Ct. 13, 92 L.Ed.2d 768 (1986); State v. Barnes, 592 So.2d 1352 (La. App. 5th Cir.1991).
Initially, it is questionable whether the viewing of the defendant by the victims who were seated in the courtroom can be categorized as an "identification procedure". Nevertheless, even assuming that the such viewing was an "identification procedure" and was suggestive, the court must decide whether, under all of the circumstances, that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification, for it is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. The reliability of the identification is tested by the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness, and (5) the length of time between the crime and the confrontation. Against these factors is weighed the corrupting effect of the suggestive procedure itself. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
Applying the Manson analysis, it appears that these "identifications" of the defendant by the victims were reliable. The victims had ample opportunity to view the defendant during the commission of these offenses. The defendant and his accomplice made no attempt to conceal their facial features and obviously Natural Nails was well-lit because manicuring was in progress. Additionally, the defendant and his accomplice were in the business for an extended period of time considering that they ordered everybody to the rear and then began taking victims out of the rear bathroom one-by-one to be tied-up before fleeing the scene.
*993 The victims were able to pay a high degree of attention to the defendant as he was "pumping" a shotgun and ordering everyone to proceed to the rear of the establishment and the defendant was within a relatively short distance of the victims.
Although the description of the defendant was vague and no one could identify him from a photographic book of Vietnamese males, the level of certainty demonstrated by the victims at the pre-trial motion was high in that upon viewing the defendant "in-the-flesh" they immediately recognized him as one of the perpetrators notwithstanding the lapse of approximately six months.
Considering the totality of the circumstances, the viewing of the defendant at the pre-trial motion, even if suggestive, nevertheless produced a reliable identification. Therefore, the trial court did not err in denying the motion to suppress identification.
This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER THREE
The trial court committed reversible error when it refused to allow appellant to display his tattoos for the jury unless he would take the stand and subject himself to cross-examination.

DISCUSSION
The defendant contends that the trial court erred in refusing to allow the defendant to exhibit his tattoos to the jury without subjecting himself to cross-examination. The defense sought to have the defendant exhibit his tattoos "as a piece of ... demonstrative evidence" because the victims did not mention that the defendant had numerous tattoos on both hands and his face.
The trial court allowed defense counsel to make a proffer regarding the tattoos.
In support of his contention, the defendant relies on State v. Martin, 519 So.2d 87 (La. 1988), appeal after remand, 558 So.2d 654 (La.App. 1 Cir.1990), writ denied, 564 So.2d 318 (La.1990), a case wherein the Louisiana Supreme Court reversed the defendant's convictions because the trial court committed prejudicial error by ruling that the defendant could not display his tattoos to the jury without submitting himself to cross-examination.
In State v. Martin, supra, the defendant was charged with aggravated rape, aggravated crime against nature and aggravated burglary. At trial, the primary issue was the identification of defendant. The victim testified that the man who attacked her had a tattoo on his right upper arm which "said something like `Angela,'" and "had some loops in it." In response to this testimony, the defendant asked to be permitted to display his arms to the jury, for the apparent purpose of demonstrating that he did not have a tattoo which matched the victim's description, but that he did have noticeable tattoos on his arms of a type that had not been observed by the victim on her assailant. The trial court ruled that defendant could display his arms to the jury, but that the state would then be allowed to cross-examine him on the origin of the tattoos and whether he ever had any tattoos removed. The defense attorney then chose not to have his client display his arms to the jury. At the conclusion of trial, defendant was found guilty on all three counts. The Louisiana Supreme Court reversed defendant's convictions and remanded the matter for retrial concluding that the trial court committed prejudicial error by ruling that defendant could not display his arms to the jury without submitting himself to cross-examination. The Supreme Court reasoned that since the state may compel defendant to display a physical characteristic to the jury without violating his Fifth Amendment privilege against self-incrimination, the defendant was therefore entitled to show his tattoos or lack of them in trial where such display was material, without any cross-examination as to tattoo's origin. The court further concluded that because the proposed tattoo evidence was directly relevant to the issue of identify and could have influenced the jury's assessment of the victim's identification of the defendant, the erroneous exclusion of the evidence could not be deemed harmless.
Even assuming that the trial court erred in refusing to allow the defendant to exhibit his tattoos to the jury without subjecting himself *994 to cross-examination, such error is considered harmless.
Recently, in State v. Johnson, 94-1379 (La. 11/27/95), 664 So.2d 94, 100, the Louisiana Supreme Court noted that "the history of Louisiana's harmless error rule makes clear that there has been one common directive: appellate courts should not reverse convictions for errors unless the accused's substantial rights have been violated."
The Louisiana Supreme Court adopted the federal test for harmless error announced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), as a practical guide for determining whether substantial rights of the accused have been violated. State v. Gibson, 391 So.2d 421 (La. 1980). The Chapman standard is whether there is a reasonable possibility that the evidence complained of might have contributed to the verdict, and whether the reviewing court is prepared to state beyond a reasonable doubt that it did not.
The Chapman test was refined in Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The Sullivan inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." The Louisiana Supreme Court adopted the Sullivan refinement of Chapman. State v. Code, 627 So.2d 1373 (La. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1870, 128 L.Ed.2d 491, rehearing denied, ___ U.S. ___, 114 S.Ct. 2775, 129 L.Ed.2d 887 (1994); State v. Johnson, supra. See State v. Phillips, 94-673 (La.App. 5th Cir. 3/1/95), 659 So.2d 785, where this court applied the Sullivan harmless error analysis.
In the instant case the evidence overwhelmingly established the identity of the defendant as one of the perpetrators because seven of the victims positively identified the defendant as the robber who was armed with a shotgun. Thus the guilty verdicts were surely unattributable to any error which may have occurred when the trial court refused to allow the defendant to exhibit his tattoos to the jury without subjecting himself to cross-examination. As such, any error was harmless.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
The trial court imposed an excessive and vindictive sentence.

DISCUSSION
The defendant contends that the trial court acted vindictively in imposing a sentence, which amounted to a total of 99 years, considering that he was offered a total of 18 years if he would plead guilty as charged and that no new information was developed in the course of trial to warrant such an extreme increase.
In Frank v. Blackburn, 646 F.2d 873 (5th Cir.1980), rehearing granted in part, 646 F.2d 902 (5th Cir.1981), cert. denied, 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981), the court acknowledged that a defendant cannot be punished simply for exercising his constitutional right to stand trial. However, the court held that the mere imposition of a longer sentence than the defendant would have received had he pled guilty does not automatically constitute such punishment.
Additionally, a trial judge's pre-conviction offer of a lenient sentence should not be viewed as setting a limit for the justifiable sentence following conviction. State v. Barkley, 412 So.2d 1380 (La.1982).
Furthermore, in United States v. Derrick, 519 F.2d 1, 4 (6th Cir.1975), the court stated the following:
Another factor which we see as almost inevitably influencing the decision of a trial judge is that in a plea of guilty, the crime pleaded is understood only as related in somewhat sterile fashion through the plea taking process or through a printed narration in the pre-sentence report. The sentencing following a trial upon the merits, on the other hand, sees the trial judge in possession not only of more of the detailed facts of the offense itself, but of the flavor of the event and the impact upon any victims. It is for that reason a more real and accurate appraisal of the circumstances which brought the defendant to the *995 bar of justice, and almost inevitably this added knowledge will affect the judge's consideration of what penalty appears most appropriate. This can, of course, work to the benefit or the detriment of the defendant according to the degree of culpability shown by the proofs.
In imposing the sentence, the trial court stated that the jury convicted the defendant as charged of ten counts of armed robbery and attempted armed robbery; that he considered the sentencing guidelines which provided for a 50 year maximum sentence for the armed robbery and a nine year sentence for the attempted armed robbery, but would deviate from them; that the defendant had a prior conviction for felony theft; that considering the circumstances surrounding the crime, the sentence would exceed the one recommended by the guidelines; that the defendant entered a ladies' hair salon with a sawed-off shotgun, ordered the owner to lie down and put the shotgun to the back of his head; that he tied up the employees and patrons with duct tape after ordering them to the rear bathroom of the establishment; that a victim testified that the defendant put a gun to the head of her five-year-old and her ten-year-old; and that, in sum, the defendant along with his co-defendant terrorized these people.
Considering the trial court's reasons, the sentence imposed was attributable to the court's more accurate appraisal of the circumstances after hearing the full disclosure of the facts at trial.
This assignment of error has no merit.

ASSIGNMENT OR ERROR NUMBER FIVE
Also assigned as error are any and all errors patent of the face of the record.
A review of the record reveals no error patent on the face of the record.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.