MARC E. JOHNSON, Judge.
|2Pefendant, Victor Sanders, appeals his convictions for attempted armed robbery and attempted simple escape. For the reasons that follow, we affirm.
Defendant was charged in a bill of information on May 6, 2011 with attempted armed robbery in violation of La. R.S. 14:27 and 14:64 and attempted simple escape in violation of La. R.S. 14:27 and 14:110. He pled not guilty and filed several pre-trial motions, including motions to suppress his statement and the evidence which were denied after a hearing. He initially proceeded to trial on August 25, 2011, but a mistrial was declared prior to the seating of a jury. Defendant again proceeded to trial on September 27, 2011. After a two-day trial, a 12-person jury found defendant guilty as charged on both counts. The trial court subsequently sentenced defendant to ten years imprisonment for his attempted armed robbery conviction and two years imprisonment for his attempted simple escape conviction, which was ordered to run consecutively to his ten-year sentence on count one.

FACTS

In March 2011, Detective Daniel Dar-bonne was working as an undercover narcotics detective with the Gretna Police Department when he met and purchased marijuana from Stacy Mason. On occasion, Mason put Detective Darbonne in contact with other people from whom Detective Darbonne purchased marijuana. 13According to Detective Darbonne, Mason received “kickbacks” from the sellers for purchases he made.
At some point during Detective Dar-bonne’s month-long association with Mason, Mason indicated she knew someone who would sell two pounds of marijuana for $800 per pound. Detective Darbonne expressed an interest and Mason put him in contact with defendant. Defendant first contacted Detective Darbonne on his cell phone via text message and instructed Detective Darbonne to contact him. The two subsequently spoke on the phone at which *997 time defendant advised he had two pounds of marijuana that he would sell for $800 per pound. Detective Darbonne suggested they meet at Brother’s Food Store on Veterans Hwy. for the “buy,” but defendant did not want to meet there because he believed there were too many police in that area. Instead, defendant wanted to meet at the Winn-Dixie on Williams Blvd. The two agreed to meet at the Winn-Dixie the next day at 1:00 p.m. These phone conversations between Detective Darbonne and Mason and Detective Darbonne and defendant were recorded and admitted into evidence and played for the jury.
The following day, March 18, 2011, at the designated time, Detective Darbonne, accompanied by Detective Steve Arnold of the Jefferson Parish Sheriffs Office, went to the Winn-Dixie where a surveillance team was in place. When the detectives arrived at the Winn-Dixie, defendant called Detective Darbonne and changed the meeting location to Brother’s on Veterans Blvd. Detective Darbonne notified the surveillance team and proceeded to the Brother’s Food Store despite his “gut feeling” that something was not right. He explained that there was the possibility of a “rip off’ in light of the last minute changes and because he did not know the person who had agreed to sell him a large amount of marijuana.
14At Brother’s, Detective Darbonne pulled into a parking space and waited for defendant. Defendant arrived and pulled his vehicle alongside the detectives. He asked Detective Darbonne if he had the money and if he was ready to do the deal, to which Detective Darbonne affirmatively responded. Defendant then pulled his vehicle into another parking spot, called the detective on his phone, and told the detective to meet him in the store. Detective Darbonne went into the store where the two shook hands. Detective Darbonne noted that defendant’s hands were sweaty. Defendant then instructed the detective to meet him inside his vehicle.
Once inside defendant’s vehicle, Detective Darbonne asked to see the marijuana. Defendant responded that he did not have the marijuana there. Defendant then asked if the detective had the money and Detective Darbonne stated it was not on his person but he had it nearby. The two further negotiated and defendant agreed to reduce the price by $100, but stated they had to go to his place, which was one street over, where the marijuana was located. Detective Darbonne testified that it was sounding more and more like a “rip off.” He noted that this was the second time defendant changed the plans. However, he agreed to meet defendant at the third location, which was 2601 Huntsville.
Detective Darbonne returned to his vehicle and used his radio to advise the surveillance team of the change. The surveillance team relocated to the area, which was a dead-end street with townhouses. Detective Darbonne explained that through his training he knew that deals “go bad” on dead-end streets. He stated defendant parked in an area with high grass near a dilapidated residence that appeared abandoned.[1] Detective Dar-bonne turned his vehicle around at the dead-end street in case he needed to escape and started looking for defendant when his phone rang. It was defendant telling the detective to meet him in the back.
IsDetective Arnold, who was in the backseat of the vehicle, testified the situation *998 was looking more like a robbery and he felt they were being set up for an ambush because defendant had changed the plans several times and would not come out to the street to meet them. Both detectives then saw defendant standing in the back alleyway trying to conceal a knife in his left hand by holding it alongside his leg. Detective Darbonne immediately advised on his radio that this was a “rip off,” and he and Detective Arnold left the location. Detective Darbonne testified that all the “flags” indicated defendant intended to rob them.
A few minutes later, defendant left the area in his vehicle and was stopped by officers two blocks away. Defendant was arrested for conspiring to distribute marijuana and advised of his Miranda[2] rights. Defendant denied having any marijuana and told the officers they could search his vehicle. While standing outside the vehicle, Detective Ashton Gibbs noticed a knife in plain view on the center console. The car was subsequently searched and no marijuana was found. A set of keys was found on defendant but did not open the Huntsville residence. Defendant was never linked to any of the townhouses on Huntsville, but rather was linked to an address in LaPlace.
Defendant was transported to the Gret-na Police Department Detective Bureau and placed in a holding cell. In order to secure defendant to an eyebolt in the holding cell, Detective Alfred Disler uncuffed defendant’s right hand. When he did so, defendant used his left arm to elbow the detective in his side, causing him to fall into the doorway. According to Detective Disler, defendant then tried to go towards the threshold of the door to get out of the cell. Detective Disler grabbed defendant by his shirt at which time defendant took a swing at him. A physical altercation ensued until defendant was subdued by the assistance of other | (¡officers. Defendant was later examined by EMS and refused to go to the hospital. The attending medical technician testified defendant complained of a gash above his left eye and a Band-Aid was applied.
After the altercation, Detective Gibbs, the arresting officer and lead detective on the case, met with defendant. He noted defendant was crying. According to Detective Gibbs, defendant kept saying he did not want to go back to jail and begged the detective to let him go. Defendant told Detective Gibbs that he never intended to sell marijuana. He explained he did not have a job and was living out of his car. Defendant stated he intended to rob the men, who he did not know at the time to be police officers, of the money they planned to use to purchase the marijuana. He explained he was going to take the money with the knife. He admitted he did not live at the Huntsville address and that he did not know anyone who did. Defendant refused to give an audiotaped statement.

DISCUSSION

In defendant’s first assignment of error, he contends the evidence was insufficient to prove his conviction for attempted armed robbery.[3] He maintains the evidence failed to prove he intended to take anything from the undercover officers. He asserts the only evidence an armed robbery was even contemplated was Detective Gibbs’ testimony about what defendant had told him after defendant had been punched by officers during his escape *999 attempt. Defendant further argues he had the knife only to protect himself during the drug deal, which is an inherently dangerous activity.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the ^prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A reviewing court is required to consider the whole record and determine whether a rational trier of fact could have found defendant guilty beyond a reasonable doubt. State v. Price, 00-1883 (La.App. 5 Cir. 7/30/01), 792 So.2d 180, 184.
Armed robbery is defined as “the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.” La. R.S. 14:64(A). A dangerous weapon is “any ... instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.” La. R.S. 14:2.
An attempt occurs when the offender, “having the specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object.” La. R.S. 14:27(A). Attempt requires both specific intent to commit a crime and the commission of an overt act tending toward accomplishing the offense. State v. Thomas, 604 So.2d 52, 58 (La.App. 5th Cir.1992). Mere preparation to commit a crime does not constitute attempt, but lying in wait with a dangerous weapon with the intent to commit a crime is sufficient to constitute an attempt to commit the offense intended. La. R.S. 14:27(B)(1).
Thus, to prove an attempted armed robbery, the State had to prove that defendant (1) had specific intent to commit the crime of armed robbery, and (2) did an act for the purpose of and tending directly toward the commission of the crime of armed robbery. State v. Nguyen, 95-1055 (La.App. 5 Cir. 3/26/96), 672 So.2d 988, 991, writ denied, 96-1019 (La.10/4/96), 679 So.2d 1377.
Defendant argues there was no evidence he had intent to take anything from the officers and no evidence that he made an attempt to take anything from the ^officers. Specific intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Since specific intent is a state of mind, it need not be proven as a fact, but may be inferred from the circumstances of the actions of the defendant. State v. Nguyen, supra. We note that for purposes of attempted armed robbery, the actual act of taking need not be established. Id.
We find a reasonable juror could infer from the evidence that defendant possessed the requisite intent to take money from the undercover officer. Detective Darbonne testified that he had never conducted a drug transaction with defendant. Despite having agreed on the location for the drug transaction, defendant changed the location twice at the last minute. According to Detective Darbonne, this was indicative of a “rip off.” Additionally, at the second location, defendant stated he did not have the marijuana but asked the detective if he had the money to which he affirmatively responded. After confirming Detective Darbonne had the money, defendant led him to a third location, which he *1000 stated was “his place” and where he indicated the marijuana was located. The residence, located on a dead-end street, was dilapidated and appeared abandoned. Detective Darbonne explained warning flags were going up; namely, abandoned residences and dead-end streets are where deals “go bad”.
While Detective Darbonne was looking for defendant at the third location, defendant called him on his cell phone and told the detective to meet him in the back alleyway. At that time, Detective Dar-bonne saw defendant holding a knife alongside his leg. Detective Darbonne immediately left the area and advised the surveillance team that the transaction was a “rip off.” When defendant was subsequently stopped, the knife was located in his car but no marijuana was found on his person or in his car. Additionally, no marijuana was found near the 19residence where defendant was lying in wait for Detective Darbonne. The lead detective on the case testified that the fact no marijuana was found, led him to believe defendant intended to rob Detective Darbonne.
Furthermore, defendant told the arresting officer that he never intended to sell marijuana, but rather he planned to rob the detective of the money intended for the purchase of the marijuana with his knife.
We conclude this evidence amply supports a finding that defendant had specific intent to rob Detective Darbonne. Additionally, by waiting for the detective in a back alleyway with a knife and trying to lure the detective there, defendant committed an overt act tending directly toward accomplishing the armed robbery. See State v. Bias, 10-1440 (La.App. 3 Cir. 5/4/11), 68 So.3d 399, 407, writ denied, 11-1063 (La.11/14/11), 75 So.3d 939, where the court found that producing a weapon was an act in furtherance of an attempted robbery, and further noted that the “overt act need not be such that it will result in commission of the crime unless frustrated by extraneous circumstances.” Thus, we find the evidence sufficiently supports defendant’s conviction for attempted armed robbery.
We note that although defendant suggests that he used the knife for protection because drug deals are inherently dangerous, defendant was in control of the transaction. He dictated the location of where the transaction would take place, he led the detectives to the final remote and seemingly abandoned location instead of Brother’s or Winn-Dixie. If defendant was in fear of being robbed of the marijuana, which he never had, it is unlikely he would have chosen such a remote setting for the transaction.
In defendant’s second assignment of error, he contends the trial court erred in admitting evidence of other crimes by allowing the statement defendant made to Detective Gibbs about going “back to jail.”
| mPrior to trial, the State filed a Notice of Intent to Use Evidence of Other Crimes and advised its intent to use defendant’s statement that he tried to escape because he did not want to go back to jail as motive for his attempted simple escape offense. Over defendant’s objection, the trial court ruled that the State could use the statement at trial. At trial, Detective Gibbs testified that when he walked in to question defendant, defendant “kept telling me that he did not want to go to jail, and he was basically begging me to let him go.” The State then asked, “And in your report, I believe you put that he said he didn’t want to go back to jail. Is that correct?” to which the witness affirmatively responded.
Generally, evidence of other crimes or bad acts committed by a criminal defen *1001 dant is not admissible at trial. La. C.E. art. 404(B)(1). However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule. State v. Dauzart, 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165.
The defendant bears the burden to show that he was prejudiced by the admission of the other crimes evidence. State v. Miller, 10-718 (La.App. 5 Cir. 12/28/11), 83 So.3d 178, 187, writ denied, 12-282 (La.5/18/12), 89 So.3d 1191. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to La. C.E. art. 404(B)(1) will not be disturbed. Id.
We find defendant’s statement that he did not want to go back to jail was not inadmissible evidence of other crimes or bad acts because it did not refer to any specific crime or bad act committed by defendant and was vague and ambiguous. Vague, non-pointed statements do not constitute other crimes evidence. State v. Harris, 28,517 (La.App. 2 Cir. 8/21/96), 679 So.2d 549, writ denied, 96-2954 (La.9/26/97), 701 So.2d 975.
In State v. Smothers, 02-277 (La.App. 5 Cir. 12/30/02), 836 So.2d 559, writ denied, 03-447 (La.10/10/03), 855 So.2d 329, this Court found police reference in the defendant’s statement to the fact the robberies for which the defendant was being questioned were separate from the reason the defendant was currently in custody did not constitute inadmissible other crimes evidence because the remark did not refer to any specific crime committed by the defendant.
Also, in State v. Smart, 05-814 (La.App. 5 Cir. 3/14/06), 926 So.2d 637, 647, writ denied, 06-1225 (La.11/17/06), 942 So.2d 533, this Court concluded that an officer’s comment that the defendant was taken into custody on an unrelated matter was not inadmissible evidence of other crimes or bad acts because the officer did not refer to any specific crime or bad act committed by the defendant and the comment was vague and ambiguous.
And, in State v. Dobbins, 05-342 (La.App. 5 Cir. 12/27/05), 920 So.2d 278, 284-85, this Court recognized that the defendant’s statement that he had “been in trouble before” did not constitute inadmissible other crimes evidence. This Court noted that defendant did not refer to any specific crime or bad act he committed when he made the statement.
Likewise, in the present case, defendant’s statement that he did not want to return to jail did not specifically refer to any specific crime or bad act committed by defendant and, therefore, was not a reference to other crimes.

ERRORS PATENT

In our routine review of the record for errors patent in accordance with La.C.Cr.P. art. 920, we note that although the commitment reflects defendant was properly advised of the prescriptive period for filing post-conviction relief pursuant to La.C.Cr.P. art. 930.8, the transcript does not so reflect. Since the transcript |12prevails when there is a discrepancy between the commitment and the transcript,[4] we advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.
*1002 We note an additional discrepancy between the transcript and the commitment. The transcript reflects the trial court imposed the 10-year sentence on count one without benefit of parole, probation or suspension of sentence. There was no restriction of benefits for the two-year sentence on count two, which was to run consecutively to count one. However, the commitment does not specify that the restriction of benefits only applied to count one.
Accordingly, we direct the trial court to correct the commitment to accurately reflect that only the sentence on count one was imposed without benefits. We further direct the clerk of court to transmit the original of the corrected minute entry to the officer in charge of the institution to which the defendant has been sentenced and send a copy to the Department of Correction’s Legal Department. See La. C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846 (per curiam).

CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT

. A subsequent investigation revealed there was no furniture or other household items that indicated anyone lived at the residence.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Defendant does not challenge the sufficiency of the evidence related to his conviction for attempted simple escape.

. State v. Lynch, 441 So.2d 732, 734 (La.1983).