FREDERICKA HOMBERG WICKER, Judge.
l?In this criminal proceeding, defendant appeals his convictions for attempted armed robbery and armed robbery, claiming that the state failed to put forth sufficient evidence to support his convictions. Defendant further assigns as error the *230 trial court’s denial of his motion for mistrial, claiming he was deprived of his right to a fair trial and the presumption of innocence when jurors observed deputies escorting him into a restricted access area of the courthouse. We find the trial court did not abuse its discretion in denying defendant’s motion for mistrial. We further find the evidence sufficient to support the jury’s verdict and affirm defendant’s convictions.

PROCEDURAL BACKGROUND

The Jefferson Parish District Attorney filed a bill of information charging defendant, Deairen Williams, with one count of attempted armed robbery in violation of La, R.S. 14:27:64 (count two) and two counts of armed robbery in |sviolation of La. R.S. 14:64 (counts three and four).[1] Defendant pled not guilty at arraignment.[2] Defendant proceeded to trial before a twelve-person jury and on April 20, 2011, the jury found defendant guilty as charged. On May 9, 2011, the trial court sentenced defendant to twenty-five years imprisonment for the attempted armed robbery charge (count two) and fifty years imprisonment for the armed robbery charges (counts three and four). The trial court ordered defendant’s sentences to run concurrently and to be served with the Department of Corrections without benefit of parole, probation, or suspension of sentence.[3] Defendant filed a motion for appeal, which the trial court granted.
On July 26, 2011, the state filed a multiple offender bill of information, alleging defendant to be a second felony offender.[4] The trial court adjudicated defendant a second felony offender, vacated his original sentence as to count three and imposed an enhanced sentence of fifty-years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence under La. R.S. 15:529.1.[5]

FACTUAL BACKGROUND

Deputy Drew Weidenbacher of the Jefferson Parish Sheriffs Office responded to a call regarding armed robberies on the evening of February 6, 2010. Two separate incidents, minutes apart, had been reported: an attempted armed robbery of William David Ivy and armed robberies of Don and Bernadette McAllister. While responding to the call, Weidenbacher noticed three individuals fitting the subjects’ general descriptions walking together down Canyon Street near |4Ames Blvd. Weidenbacher stopped his patrol unit, exited the vehicle, and announced his presence to the three individuals, who took off running. After running together for a block or two, one individual separated from the others and began running along a canal bank. Weidenbacher chased and apprehended that individual, later identified as Ashton Chopin.
After his arrest, Chopin provided two statements to police admitting his involvement in the robberies and implicating defendant and another individual, Howard *231 Clofer, in the crimes.[6] Officers located Clofer, who also provided two statements to police. In his statements, Clofer also implicated defendant and Chopin in the crimes.
The first victim, William David Ivy, testified that at approximately 9:00 pm. on February 6, 2010, three young black males approached him in his driveway and attempted to rob him. Ivy stated that one of the three men stood in the street as a “lookout,” another went to the other side of his yard waving a gun, and the other approached Ivy, pointed a gun to his head, and said, “[g]ive me what you got.”[7] Ivy responded that he did not have anything to give. After again demanding money and receiving the same response, the gunman struck Ivy in the head with the gun, bringing him down to one knee. The gunman demanded Ivy’s car keys but after a neighbor’s dog made noise, the men fled. As the men fled, Ivy looked over the hood of his car. One of the three men then fired a shot in Ivy’s direction, forcing him to duck down behind his vehicle until the men were out of sight.
After the incident, detectives brought Ivy to a nearby school to identify an individual in custody.[8] Ivy indicated he was 80-85% certain the individual in |5custody was the “lookout,” but that he could not be 100% certain. Detectives subsequently presented Ivy with three sets of photographic lineups from which he immediately identified defendant and Clofer as the two gunmen involved in the attempted armed robbery. Detectives conducted a search of Clofer’s mother’s residence with consent and located a .380 caliber handgun in Clofer’s bedroom closet. Subsequent testing confirmed that the .380 handgun recovered from Clofer’s closet was in fact the handgun fired at the scene of the attempted armed robbery. Ivy identified defendant at trial and testified that he is absolutely certain that defendant is the gunman who pointed a gun to his head, demanded his money, and struck him in the head with the barrel of the gun.[9]
Two other victims, Don and Bernadette McAllister, reported they had also been robbed at approximately 9:00 p.m. on February 6, 2010. The McAllisters had just returned home from a shopping trip and Mrs. McAllister remained in the car to gather her things while Mr. McAllister exited the vehicle to bring a package inside. As he attempted to open his front door, Mr. McAllister noticed three black males walking in the street about seventy-five feet from his house. Seconds later, he heard footsteps rapidly approaching and then heard a male voice shout, “[b]itch, give me your money.” Mr. McAllister turned around and saw two men with guns pointed at him; he gave the lead gunman his wallet and cell phone. He testified that the other gunman then stepped up closer to him, put a gun to his face, and said, “[ljet’s jack the car.” Mr. McAllister gave the men a set of keys but told them he needed to get his wife out of the car. *232 He walked to the car and told Mrs. McAl-lister to get out and give the men her purse. Mrs. McAllister testified that she gave the men her purse and then she and Mr. McAllister quickly went inside and le,called 9-1-1. Mr. McAllister watched from inside as the three men got into his vehicle parked in the driveway; however, the men could not start the vehicle because Mr. McAllister had given them the wrong set of keys. Mr. McAllister reported to police that the three men then fled on foot toward Canyon street.
Mr. and Mrs. McAllister could not make any positive identifications when presented with photographic lineups. Mr. McAllister reported that there were three perpetrators: two gunmen and one “lookout,” who stood approximately fifteen feet away from the other two and closer to the street. After the incident, detectives brought Mr. and Mrs. McAllister to a nearby school to identify the individual in custody; Mr. McAllister stated that he was 75% certain that the person in custody was the “lookout.” At trial, Mr. McAllister testified that the lead gunman was the tallest of the three men and that he is 75% certain that defendant is one of the gunmen who robbed him. Mrs. McAllister testified that she intentionally kept her eyes down during the robbery and could not make any positive identifications of the perpetrators.
The state compelled Clofer to testify at trial. On direct examination, Clofer testified that he, Chopin, and defendant walked through a residential neighborhood to get to Danny and Clyde’s on Ames Blvd. Clofer admitted that, while walking through the neighborhood, he, defendant, and Chopin committed the attempted armed robbery of Ivy and, minutes later, the armed robberies of Mr. and Mrs. McAllister. Clofer testified that he had been convicted for those crimes and was incarcerated at the time of trial. Clofer however testified that defendant did not carry a gun and stood back while he and Chopin committed the robberies. Clofer admitted that all three men did intend to share any money they obtained from the robberies.
|70n cross-examination, however, Clofer changed his story and testified that defendant did not participate in the robberies. Clofer testified that defendant previously lent him a pellet gun but that defendant was not present and did not have knowledge of the robberies. On re-direct, Clofer testified that he lied in his earlier testimony and that in fact a third, unknown person — not defendant — acted as a “lookout” in the crimes.
Defendant testified at trial that he has known Clofer since seventh grade and has only known Chopin for a brief period of time from the neighborhood. After he learned that Clofer and Chopin had implicated him in the crimes, he turned himself into police and voluntarily gave a recorded statement.[10] In his statement to police and in his testimony at trial, defendant denied any involvement in the robberies. Defendant claimed that Chopin and Clofer came to his house at some point on February 6, 2010, to get a pellet gun. They told defendant they might “go on a lick,” or commit an armed robbery. However, defendant claimed that he did not believe that Chopin and Clofer would actually rob anyone. Defendant testified that he did not participate in either the attempted armed robbery of Ivy or the armed robberies of the McAllisters and maintained that he stayed home on the evening of February 6, 2010.

DISCUSSION

We will first consider defendant’s claim that the evidence at trial was not *233 sufficient to support his conviction. When the issues on appeal pertain to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992).
|sThe standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. King, 06-554 (La.App. 5 Cir. 1/16/07), 951 So.2d 384, 390, writ denied, 07-0371 (La.5/4/07), 956 So.2d 600.
An appellate court’s priihary function is not to redetermine the defendant’s guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses. Rather, our function is to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the jury’s conclusion. State v. Banford, 94-883 (La.App. 5 Cir. 3/15/95), 653 So.2d 671, 677.
Evidence may be direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208.
Defendant is charged with two counts of armed robbery in violation of La. R.S. 14:64. To support a conviction for armed robbery, the state must prove beyond a reasonable doubt that defendant took anything of value from the person of another by use of force or intimidation while armed with a dangerous weapon. La. R.S. 14:64; State v. Wade, 10-997 (La.App. 5 Cir. 8/30/11), 77 So.3d 275, 279. A dangerous weapon “includes any ... instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.” La. R.S. 14:2. A gun used in connection with a robbery is, as a matter of law, a dangerous weapon. State v. Mason, 10-284 (La.App. 5 Cir. 1/11/11), 59 So.3d 419, 425, writ denied, 11-0306 (La.6/24/11), 64 So.3d 216. Furthermore, the act of pointing a gun at a victim is sufficient to prove the required element of force or intimidation for purposes of armed robbery. Id.
Defendant is also charged with attempted armed robbery. An attempt occurs when the offender has the specific intent to commit a crime and does or omits an overt act in furtherance of accomplishing the offense. State v. Sanders, 12-114 (La.App. 5 Cir. 9/11/12), 101 So.3d 994, 999 (quoting La. R.S. 14:27(A)). Mere prepa ration to commit a crime does not constitute attempt. However, lying in wait with a dangerous weapon with the intent to commit a crime is sufficient to constitute an attempt to commit the offense intended. Id. Whether a defendant possessed the requisite intent in a criminal case is a question for the trier of fact and a review of the correctness of that determination is guided by the Jackson standard. State v. Gant, 06-232 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, 1111, writ denied, 06-2529 (La.5/4/07), 956 So.2d 599, and State v. Spears, 05-0964 (La.4/4/06), 929 So.2d *234 1219, 1224.[11]
The law of principals states that all persons involved in the commission of a crime are equally culpable. See La. R.S.14:24 and State v. Hampton, 98-0331 (La.4/23/99), 750 So.2d 867, 880. Principals are defined as “all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly | inor indirectly counsel or procure another to commit the crime.” La. R.S. 14:24. An individual may only be convicted as a principal for those crimes which he personally has the requisite mental state. Mason, 59 So.3d at 425. The mere presence at the scene of the crime does not make one a principal to the crime. However, “it is sufficient encouragement that the accomplice is standing by at the crime scene ready to give some aid if needed[.]” Mason, 59 So.3d at 425-426.
Defendant does not argue that the state failed to prove any of the essential statutory elements of his convictions, but rather contends the state failed to prove beyond a reasonable doubt his identity as a perpetrator in the robberies.[12] Defendant claims that the state failed to negate a reasonable probability of misidentification and did not refute his theory that an unknown third individual participated in the crimes.
In addition to proving the statutory elements of the charged offense at trial, the state is required to prove defendant’s identity as the perpetrator. State v. Draughn, 05-1825 (La.1/17/07), 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007); State v. Ingram, 04-551 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926. Where the key issue is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Draughn, 950 So.2d at 593. Positive identification by one witness is sufficient to support a conviction. State v. Harris, 07-124 (La.App. 5 Cir. 9/25/07), 968 So.2d 187, 193.
The state put forth evidence that defendant, Chopin, and Clofer committed the attempted armed robbery of Ivy and then, minutes later and less than one mile away, committed the armed robberies of the McAllisters. Clofer and Chopin both [ ngave statements to detectives shortly after the robberies and implicated defendant in the crimes. Chopin provided two statements to police. In both statements, Chopin indicated that defendant participated and in fact was the “lead” gunman in both the attempted armed robbery of Ivy and the armed robberies of the McAllisters. Clofer also provided two statements to police. In both statements, Clofer implicated defendant in the crimes.[13] In his second statement to police, Clofer admitted that *235 he, Chopin, and defendant attempted to rob Ivy and then, minutes later, proceeded to rob the McAllisters. Clofer admitted that he carried a .380 caliber handgun and that he fired that weapon during the attempted armed robbery of Ivy. He also told police that defendant carried a pellet gun during both robberies and that defendant and Chopin committed the armed robberies of the McAllisters while he stood near the street as the lookout.
At trial, Ivy positively identified defendant as the robber who pointed a gun in his face and demanded money. The McAl-listers were unable to make positive identifications. However, Mr. McAllister described the perpetrators as three young, black males and testified at trial that he was 75% certain that defendant participated in the robbery as one of the gunmen. He also testified that the lead gunman was the tallest of the three men and defendant admitted in his testimony that he is the tallest of the three alleged perpetrators.
Further, Mr. McAllister reported to authorities that the three young men fled after the robbery toward a side street, “Canyon.” The patrolling officer Weiden-bacher testified that on the evening of February 6, 2010, shortly after 9:00 p.m., he saw three young men, meeting the descriptions of the alleged perpetrators, walking together down Canyon Street near Ames Blvd. When Weidenbacher 112announced his presence, the men took off running. Weidenbacher apprehended one of the three men, Ashton Chopin, in close proximity in time and location to the reported robberies. Chopin, in his statement to police, immediately reported defendant’s involvement in the crimes.
Although all three victims could not positively identify defendant, we find the state presented sufficient evidence to link defendant to the crimes charged. See Mason, 59 So.3d at 419. The evidence shows that Clofer, Chopin, and defendant together committed the attempted armed robbery of William Ivy and then, minutes later, committed the armed robberies of Mr. and Mrs. McAllister. Accordingly, we conclude the evidence of defendant’s identity as a perpetrator involved in the robberies negates any possibility of misidentification. Therefore, this assignment is without merit.
Defendant further assigns as error the trial court’s denial of his motion for mistrial. On the second day of trial, defendant moved for a mistrial, claiming that he was deprived of his right to a fair trial and the presumption of innocence when jurors observed him escorted by deputies into a restricted access area of the building. The trial judge denied defendant’s motion, finding defendant suffered no actual prejudice that would impact the jury’s verdict.
La.C.Cr.P. art. 775 provides that, “[u]pon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial[.]” A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to defendant that deprives him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be 113disturbed absent an abuse of that discretion. State v. Pierce, 11-320 (La.App. 5 Cir. 12/29/11), 80 So.3d 1267, 1271.
Ordinarily, a defendant before the court should not be shackled or handcuffed or garbed in any manner destructive of the presumption of his innocence and of the dignity and impartiality of judicial proceedings. State v. Wilkerson, 403 *236 So.2d 652, 659 (La.1981). However, the momentary use of restraints for the limited purpose of transporting the accused does not mandate a mistrial. State v. Thornton, 36,757 (La.App. 2 Cir. 1/29/03), 836 So.2d 1235, 1241, writ denied, 03-0861 (La.10/31/03), 857 So.2d 474; State v. Jones, 31,613 (La.App. 2 Cir. 04/01/99), 733 So.2d 127, writ denied, 99-1185 (La.10/01/99), 748 So.2d 434. The mere possibility that a defendant was prejudiced is insufficient to support an appellate court’s finding of reversible error. State v. Bradham, 638 So.2d 428, 429 (La.App. 5 Cir. 5/31/94). Rather, there must be a showing by the defendant that jurors did view defendant and that the viewing resulted in prejudice to the defendant which impacted upon the verdict. Bradham, 638 So.2d at 429.
In this case, defendant did not request an evidentiary hearing; rather, the state and defense stipulated to the court’s recitation of the following facts:
As deputies were transporting Mr. Williams from the courtroom across the hall, some fifteen/twenty feet (15/20'), across the hall, the Defendant was dressed in street clothing, was not handcuffed, was not shackled. As he was being walked across the hall, the jurors were being escorted out of my courtroom — or I’m sorry — out of my chambers, and it is possible that one (1), possibly two (2) or three (3), saw the defendant being escorted out. And when I say “escorted”, I say just in the presence of the guards. As I said, he was not being handled by the deputies, he was not in prison attire, he was not shackled, and he was not in handcuffs. As soon as the deputies escorting the jury out of my chambers saw the defendant and the deputies, the deputy escorting the jurors stopped the jurors and allowed the hall to be cleared.”
The state and defense stipulated that one, possibly two or three jurors, while exiting the judge’s chambers, observed defendant being escorted by two deputies 114into a restricted access area of the building. Defendant was not handcuffed or restrained in any way and was dressed in plain street clothes. The record reflects that the deputies did not “handle” defendant, but merely escorted or walked with him. Therefore, under these facts, we find the trial judge did not abuse her discretion in finding that defendant did not show actual prejudice sufficient to impact the jury’s verdict or in denying defendant’s motion for mistrial. This assignment is without merit.
In defendant’s final assignment of error, he claims that his fifty-year enhanced sentence as a multiple offender under La. R.S. 15:529.1 is unconstitutionally excessive. Defendant argues that the mechanistic application of the Habitual Offender Law imposes upon defendant — who was 17 years old at the time of the crimes — a virtual life sentence. Defendant further asserts that, in light of the recent decisions of the United States Supreme Court in Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) and the Louisiana Supreme Court in State v. Dyer, 11-1758 (La.11/23/11), 77 So.3d 928 (per curiam), this Court should remand to the trial court for resentencing.
We find that defendant has not properly appealed his multiple offender adjudication and sentence. On May 27, 2011, defendant filed a motion for appeal of “the Verdict rendered herein on the 20th day of April, 2011 and the Sentence imposed herein on the 9th day of May, 2011.” On May 31, 2011, the trial court granted defendant’s motion for appeal. On November 18, 2011, the trial court adjudicated and sentenced defendant as a second felony offender. Defendant never filed a written motion for *237 appeal of his multiple offender adjudication and sentence. Further, defendant’s original motion for appeal, filed on May 26, 2011, and granted on May 31, 2011, specifically states the verdict and sentences 115appealed and cannot serve as a motion for appeal of defendant’s subsequent multiple offender adjudication.
Therefore, we find that defendant has not timely appealed his multiple offender adjudication or sentence. Accordingly, defendant’s assignment of error regarding the excessiveness of his enhanced multiple offender sentence is not properly before this Court and we thus pretermit any consideration or discussion of this assignment of error.[14]
When a defendant fails to move for an appeal within the time provided in La. C.Cr.P. art. 914, he loses his right to obtain an appeal by simply filing a motion for appeal in the trial court. State v. Gray, 04-1272 (La.App. 5 Cir. 4/26/05), 902 So.2d 1060, 1061. This is not because the trial court has been divested of jurisdiction, but rather because the conviction and sentence became final when the defendant failed to appeal timely. Id. After the time for appealing has elapsed, the conviction and sentence are no longer subject to review under the ordinary appellate process, unless the defendant obtains reinstatement of his right to appeal. State v. Martin, 12-74 (La.App. 5 Cir. 9/25/12), 101 So.3d 1004, 1005.
A defendant who has failed to appeal timely can seek reinstatement of his right to appeal in the district court in which he was convicted. Gray, 04-1272, 902 So.2d at 1061. The appropriate procedural vehicle for a defendant to seek the exercise of his right to appeal, after the delay provided in La.C.Cr.P. art. 914 has expired, is a timely-filed application for post-conviction relief. Martin, 101 So.3d at 1005. Accordingly, defendant should file in the trial court an application for post-conviction relief seeking an out-of-time appeal.

CONCLUSION

Accordingly, for the reasons provided herein, defendant’s convictions and sentences for armed robbery and attempted armed robbery are affirmed.

ERRORS PATENT DISCUSSION

We have reviewed the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We find the record contains an error patent that requires this Court to remand this matter to the trial court for correction of the commitment.
The commitment reflects the trial court sentenced defendant to “25 years at hard labor on count 2 concurrently”[15] and “50 *238 years at hard labor on counts 3, 4 concurrently.” The commitment does not clearly reflect that the trial court sentenced defendant separately for counts 3 and 4. Further, the commitment does not reflect that each separate sentence is to be served without benefit of parole, probation, or suspension of sentence.
Accordingly, we remand this matter to the trial court for correction of the commitment to reflect that the trial court imposed a separate fifty-year sentence on each count three and four and to reflect that each sentence is to be served without benefit of parole, probation, or suspension of sentence. The Clerk of Court for the Twenty-Fourth Judicial District Court is directed to transmit the original of the minute entry to the officer in charge of the institution to which defendant has been 117sentenced. See La. C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).

AFFIRMED; REMANDED

. Two other individuals, Howard Clofer and Ashton Chopin, were also charged in this bill of information.

. Defendant filed various pre-trial motions, including a motion to suppress the evidence, identification, and statement, which the trial court denied. Defendant has not assigned error to any pre-trial judgment.

. See Errors Patent Discussion.

. The state initially filed a multiple bill of information against defendant on May 27, 2011. That multiple bill set forth the incorrect predicate offense. However, a superseding indictment implicitly dismisses a first indictment. State v. Alo, 06-473 (La.App. 5 Cir. 12/27/06), 948 So.2d 275, 278.

. The trial judge ordered the enhanced sentence concurrent with defendant’s original sentences on counts two and four.

. Weidenbacher testified that he presented to Chopin single photographic lineups and that Chopin identified defendant and Clofer as involved in the crimes.

. Ivy testified that he had just returned home from McDonald’s and was exiting his car at the time of the attempted robbery.

.Detectives had Ashton Chopin in custody on the night of the robberies.

. Ivy testified that he likes to "dabble in art” and is often able to recall details of facial features. When questioned regarding lighting in or near his driveway, Ivy testified that a street light and two porch lights provided sufficient lighting to see the individuals who approached him. •

. Defendant's recorded statement was played for the jury at trial.

. Attempt requires specific intent to commit the crime intended. Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1).

. Because defendant does not challenge the sufficiency of the evidence of the statutory elements of armed robbery or attempted armed robbery, we do not address the sufficiency of the evidence with respect to the essential statutory elements of the crimes. Our review of the record however does reflect that the state presented sufficient evidence to establish the essential statutory elements of attempted armed robbery and armed robbery.

.In his first statement, Clofer denied the presence or use of any weapons in the crimes. Further, he did not mention Chopin's participation; rather, he stated that he and defendant committed the robberies without the use of weapons.

. Although defendant does not assign as error his original sentences for attempted armed robbery and armed robbery, we find the original sentences imposed are approximately half of the potential sentences for his attempted armed robbery and armed robbery convictions and are not unconstitutionally excessive. See State v. Jackson, 04-1388 (La.App. 5 Cir. 5/31/05), 904 So.2d 907, writ denied, 05-1740 (La.2/10/06), 924 So.2d 162.

. Although the transcript does not reflect that the trial judge sentenced defendant “at hard labor” on count two, as reflected in the commitment, she did state that the sentence would be served in the custody of the "Department of Corrections.” In State v. Up-church, 00-1290 (La.App. 5 Cir. 1/30/01), 783 So.2d 398, 403, this Court determined that, while the transcript did not specifically state the sentence was to be served at hard labor, it did provide the sentence would be served in the Department of Corrections. "Only individuals actually sentenced to death or confinement at hard labor shall be confined to the Department of Corrections.” Id. (citing LSA-R.S. 15:824(C); State v. Boyd, 94-641 (La.App. 5 Cir. 12/28/94), 649 So.2d 80). Accordingly, we need not remand the matter for resentencing. See State v. Vance, 06-452 (La. *238 App. 5 Cir. 11/28/06), 947 So.2d 105, 109 writ denied, 07-0152 (La.9/28/07), 964 So.2d 351.