STATE OF LOUISIANA

VERSUS

LANDON P ROGERS

NO. 23-KA-558

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 20-333, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

August 28, 2024

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Scott U. Schlegel, and Timothy S. Marcel

**AFFIRMED**
    **MEJ**
    **SUS**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
        Honorable Paul D. Connick, Jr.
        Thomas J. Butler
        Monique D. Nolan
        Carolyn Chkautovich
        Kristen Landrieu

COUNSEL FOR DEFENDANT/APPELLANT,
LANDON ROGERS
        Jane C. Hogan

**JOHNSON, J.**

Defendant, Landon P. Rogers, appeals the 24th Judicial District Court's judgments convicting him of armed robbery and sentencing him to 70 years imprisonment without benefit of probation, parole, or suspension of sentence. For the following reasons, we affirm Defendant's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

The following facts and evidence were adduced at trial.

In 2019, Connor Larson lived in an apartment in Metairie and drove a white convertible Mercedes coupe. On November 14, he was at work at a bar in uptown New Orleans when a co-worker pointed out to him two people, later identified as Jhon Da-Silva Ferreira and Defendant, Landon Rogers. He noticed that they were "out-of-place" and recalled he did not "directly recognize them". Later, he recognized Jhon, but he had never seen Defendant before.

After the end of his shift the next morning, Connor went to a nearby bar with friends and co-workers. Connor returned to his home around five or six in the morning. Shortly after settling into bed, Connor heard knocking, and his dogs began barking. Connor thought it was his co-worker he had offered earlier to let spend the night if he needed a place to crash, so he opened the door. Defendant entered with a gun drawn, and Jhon was behind him.

Defendant and Jhon wore masks and gloves and made Connor sit on his couch. Jhon and Defendant asked if he had any money or drugs in the apartment and if so, where they were. The pair took turns holding him on the couch while the other rummaged through his apartment.

In an effort to appease Jhon and Defendant, Connor offered to withdraw money from the Regions Bank ATM down the street. Then, in response to their continued inquiries about drugs, Connor offered to go to his mother Rochelle Peiffer's nearby apartment to retrieve her medication. He did not remember

whether they went to his mother's apartment or the bank first, but once they arrived at his mother's home, only he and Defendant went inside. Connor went to his mother's bedroom to retrieve a bag with bottles of pills. As they left, Defendant looked in Connor's brother's room and took a computer from a desk.

The three men returned to Connor's apartment. One of them watched Connor as the other carried items out of the apartment to the car. Connor recalled that at some point, he was hit across the face several times with the gun. Pictures of Connor's face, which "showed bruises and red marks", were published to the jury.

Connor testified that they stripped him to his underwear, laughed at him, and made fun of his physique. Near the end of the ordeal, Jhon and Defendant removed their masks. Connor explained that if a gun was not pointed at him, then a knife from his own apartment was used to threaten him and he was terrified. He testified that Jhon and Defendant brought him to his bedroom, made him sit on the bed, and held a gun to the back of his head before disappearing.

Afterwards, Connor used a neighbor's phone to call his parents. Detectives arrived at his apartment shortly thereafter. Connor went to the investigations bureau to speak to the officers. There, he identified Defendant and Jhon from two six-person lineups. Connor admitted that, at first, he was not completely honest or cooperative with the detectives. First, he told the detectives that he had been kidnapped and robbed but did not initially tell them about his connection to Jhon. Later Connor explained that connection by recalling that, weeks prior, he bought ecstasy from Jhon using counterfeit money and believed this incident was retaliation. Connor acknowledged that he owed Jhon eight hundred dollars for the ecstasy but stated that he never saw Defendant before and did not owe him money.

On November 15, Sergeant (then Detective) Daniel Lassus, Lieutenant Frank Renaudin, Sergeant Marc Macaluso, Sergeant (then Detective) Edward Sens,

and Detective Derek Adams responded to the scene. Lead investigator Sergeant Lassus recalled that he spoke to Connor and his neighbor.

Initially, the victim said Defendant and Jhon went to his apartment around 5:15 a.m., and knocked on the door; when the victim opened it, Defendant forced his way in with a small caliber pistol before demanding money and other items. He explained that Connor told him that they put duct tape over his mouth when he began to make noise. The sergeant testified that the pistol changed hands several times and that a knife was also held to Connor. He explained that the suspects took numerous items from the apartment and put them in bags. The detective stated that they then got in the victim's car. Defendant was in the front passenger seat, and Jhon was in the back seat. Connor drove to a Regions Bank but could not use the ATM because he did not have his card, which upset the suspects. Sergeant Lassus testified that the victim said he told the suspects that there were drugs at his mother's house nearby. The suspects made Connor drive to his mother's house, where they took a shave kit containing pill bottles with her name on them. Connor told Sergeant Lassus that the men returned to Connor's residence and Jhon went inside to retrieve the ATM card. Connor then drove back to the Regions Bank, where he withdrew five hundred dollars. Connor gave them the money and the card. Then the men returned to his apartment where he was made to undress and lay down before the suspects fled. Sergeant Lassus explained that Conner initially left out some details, but later admitted that he met Jhon once for a brief hand-to-hand transaction to purchase ecstasy. Later, Connor identified the handgun used in the incident. He also identified photographs of his belongings, including a backpack, bag of marijuana, as well as duct tape and a jacket Defendant wore on the morning of the incident.

From the photograph exhibits taken at the crime scene and admitted into evidence, Sgt. Lassus identified Connor's vehicle and first-floor apartment, bottles

of pills taken by Defendant from the victim's mother's residence, and a laptop. Sergeant Lassus stated the apartment's appearance was consistent with how it was described by the victim in his statement. Also, he did not see any signs of drug use or distribution in the victim's apartment.

Lieutenant Renaudin contacted the Regions Bank branch manager, who provided photographs of the victim's vehicle with three occupants at the bank's ATM at 7:23 a.m. on November 15, 2019. Sergeant Sens used an automated license plate recognition system (ALPR system) to track the movements of the victim's white Mercedes and Defendant's green Toyota 4Runner. The timeline established by the locations of those vehicles from the evening of November 14 through the morning of November 15 corroborated Connor's statement.

Sergeant Sens observed a green Toyota 4Runner traveling approximately twenty seconds behind the victim's car as it crossed into Jefferson Parish on November 15, 2019. He explained that the green vehicle also followed the victim home around 9:50 p.m. the previous night and, about twenty minutes later, got on I-10. The green vehicle was about one mile from the victim's place of employment around 10:30 p.m. on Thursday, November 14. The ALPR system showed the green vehicle near the victim's place of employment around 1:30 a.m. on Friday, November 15. Around 5:09 a.m., the victim's car was by his apartment, and the green vehicle was about twenty seconds behind. The system reflected that at 6:58 a.m. on November 15, the victim's vehicle was at Lake Avenue and Old Hammond Highway traveling outbound. Defendant's green vehicle was captured on the Westbank at 8:15 a.m.

Sergeant Lassus explained that after the ALPR research, he conducted several interviews. He stated that Connor initially left out some details, including him buying drugs from co-defendant Jhon at some point. Connor later advised that he met Jhon once for a brief hand-to-hand transaction to purchase ecstasy and that

Connor did not get a good look at him then. Sergeant Lassus interviewed Connor again on November 21, at which time he signed a photograph identifying the handgun used in the incident. Connor also signed photographs of various items from Defendant's vehicle that belonged to him (including a backpack and a bag of marijuana), as well as duct tape, and a jacket worn by Defendant on November 14 - 15. Sergeant Lassus confirmed that Connor identified Defendant and Jhon as the perpetrators.

On November 26, Sergeant Lassus spoke to Jhon, who confirmed everything he had learned, as a result of the investigation. At trial, Jhon Da-Silva Ferreira acknowledged that he pled guilty to charges involving the kidnapping and armed robbery of Connor, to the burglary of Ms. Peiffer's home, and to various drug-related charges. After confirming that he received a fifteen-year sentence for the instant armed robbery, kidnapping, and simple burglary charges, and a twenty-year sentence for the drug-related convictions, he refused to answer any other questions and invoked what he believed was his Fifth Amendment privilege against self-incrimination.

Sergeant Macaluso testified that Defendant's green Toyota 4Runner was located on November 18 in New Orleans. Defendant was arrested, two search warrants for the vehicle were obtained, and the vehicle was towed to the investigations bureau. Investigators found two bottles of pills (containing hydrocodone and D-amphetamine salt, commonly known as Adderall) belonging to Ms. Peiffer (the victim's mother) in the car. The police also found a loaded pistol in the front compartment of the center console and recovered several items from the victim's apartment in the vehicle: a bag of whey protein, a mesh Adidas bag, toothpaste, a North Face bag which contained wires and a bag of marijuana, a headset, and vape oils. The jacket Connor said Defendant wore and a roll of Gorilla tape used to subdue Connor were also located inside the vehicle. Sergeant

Lassus also identified Defendant's voice on a jail call played for the jury and explained that Defendant referred to Regions Bank on the call, but no one from law enforcement had mentioned the bank to Defendant.

A unanimous jury found Defendant not guilty of second degree kidnapping and simple burglary of an inhabited dwelling, but convicted him of the responsive verdict of armed robbery, in violation of La. R.S. 14:64, after a two-day trial in January 2023. A week later, the district court reviewed Defendant's criminal record, observed that he was "incorrigible" and not likely to "ever get any better," and sentenced Defendant to sixty years imprisonment.

A multiple offender bill was filed in September 2023. At the initial hearing on the bill, the State offered a certified transcript of a February 2019 conviction in Livingston Parish, wherein Defendant voluntarily pled guilty to possession of marijuana with intent to distribute, and a penitentiary packet ("pen pack") to prove Defendant was the same person who was convicted of possession of marijuana with intent to distribute previously in Livingston Parish. The defense objected to the proof the State offered and argued that, in this case, the testimony of a witness was required to show that Defendant and the person convicted of the 2019 charge were the same person. The court took the matter under advisement, then denied Defendant's written motion to reconsider sentence and noted his objection to that ruling.

The district court found that, under *State v. Wade*, 22-260 (La. App. 5 Cir. 2/27/23), 358 So.3d 937, it could consider the totality of the evidence presented and found that the defendant convicted of the prior offense in 2019 and Defendant were the same person. The court adjudicated Defendant a second felony offender, vacated his previous sentence, and sentenced Defendant to seventy years without the benefit of parole, probation or suspension of sentence. The instant appeal followed.

On appeal, Defendant argues that 1) the evidence was insufficient to support his conviction of armed robbery; 2) the trial court violated his rights to confront his accusers and to due process when it allowed the State to question his co-Defendant, who previously informed the court that he refused to testify, extensively; 3) the evidence presented to support his multiple offender adjudication was insufficient; and 4) the trial court abused its discretion when it failed to consider the sentencing guidelines of La. C.Cr.P. art. 894.1, and imposed an "excessive and disparate" sentence.

The State counters that it set forth sufficient evidence to support both Defendant's armed robbery conviction and his subsequent second felony offender adjudication. Further, the State contends that co-defendant Jhon Da-Silva Ferreira's invocation of his Fifth Amendment privilege against self-incrimination "did not add critical weight to [it's] case in a form not subject to cross-examination which prejudiced Rogers unfairly". Last, because the defense failed to file a motion to reconsider sentence after Defendant's original sentence was vacated, and his adjudication as a second felony offender, the State contends that this Court is limited to a bare review for unconstitutional excessiveness, and the record supports the sentence imposed by the trial court.

**LAW AND DISCUSSION**

SUFFICIENCY OF THE EVIDENCE

Defendant argues that there is insufficient evidence to support his conviction. He contends that the only evidence was Connor's testimony, which he describes as self-serving and contradictory to the physical evidence. Defendant asserts that Connor was willingly paying off a drug debt and opines that, based on his acquittal of the other charges, the jury did not believe Connor's testimony.

The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821. *State v. Nguyen*, 22-286 (La. App. 5 Cir. 2/27/23), 359 So.3d 108, 118. Defendant did not file such a motion in this case, but the failure to file a motion for post-verdict judgment of acquittal does not preclude appellate review of the sufficiency of the evidence. *State v. Manuel*, 20-172 (La. App. 5 Cir. 6/2/21), 325 So.3d 513, 538, *writ denied*, 21-926 (La. 10/12/21), 325 So.3d 1071.

In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Lane*, 20-181 (La. App. 5 Cir. 1/27/21), 310 So.3d 794, 804. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. *State v. Gatson*, 21-156 (La. App. 5 Cir. 12 12/29/21), 334 So.3d 1021, 1034. When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *State v. Woods*, 23-41 (La. App. 5 Cir. 11/15/23), 376 So.3d 1144, 1155, *writ denied*, 23-1615 (La. 5/29/24), 385 So.3d 700. This is not a separate test from the *Jackson* standard but rather provides a helpful basis for determining the existence of reasonable doubt. *Id.*

The directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. *State v. Aguilar*, 23-34 (La. App. 5 Cir. 11/15/23), 376 So.3d 1105, 1108. This deference to the fact-finder

does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. *State v. McKinney*, 20-19 (La. App. 5 Cir. 11/4/20), 304 So.3d 1097, 1102. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *State v. Lavigne*, 22-282 (La. App. 5 Cir. 5/24/23), 365 So.3d 919, 940, *writ not considered*, 23-1119 (La. 10/10/23), 370 So.3d 1086. Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Sly*, 23-60 (La. App. 5 Cir. 11/2/23), 376 So.3d 1047, 1072, *writ denied*, 23-1588 (La. 4/23/24), 383 So.3d 608.

Here, Defendant was convicted of armed robbery. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64. To support a conviction for armed robbery, the State must prove that there was (1) a taking, (2) of anything of value, (3) from the person of or in the immediate control of another, (4) by use of force or intimidation, (5) while armed with a dangerous weapon. *State v. Collins*, 04-1443 (La. App. 5 Cir. 7/26/05), 910 So.2d 454, 457-58. A gun used in connection with a robbery is, as a matter of law, a dangerous weapon. *State v. Williams*, 12-687 (La. App. 5 Cir. 5/16/13), 119 So.3d 228, 233, *writ denied*, 13-1335 (La. 12/2/13), 126 So.3d 500. A knife has also been found to be a dangerous weapon. *State v. Delagardelle*, 06-898 (La. App. 5 Cir. 4/11/07), 957 So.2d 825, 830, *writ denied*, 07-1067 (La. 11/21/07), 967 So.2d 1154. Furthermore, the act of pointing a gun at a victim is sufficient to prove the required element of force or intimidation for purposes of armed robbery. *Williams*, *supra*. Further, "the overwhelming weight of modern authority holds that a creditor who collects on a debt by the use of force

commits the offense of robbery, which, in Louisiana, becomes an armed robbery when the offender using force or intimidation is 'armed with a dangerous weapon.'" *State v. Jackson*, 09-2406 (La. 1/19/11), 55 So.3d 767, 772.

This Court addressed the credibility of a witness in *State v. Cowart*, 01-1178 (La. App. 5 Cir. 3/26/02), 815 So.2d 275, 284-85, *writ denied*, 02-1457 (La. 5/9/03), 843 So.2d 387. In that case, there was no physical evidence linking the defendant to the crime, and a single witness identified the defendant as the perpetrator of a shooting. At trial, the reliability of the eyewitness was attacked because the witness had initially lied to the police, gave a description that did not match the defendant, had perjured herself during motion hearings, and had changed her story about the crime scene and the number of shots she heard. Despite this long list of deficiencies, this Court held that it was within the jury's discretion to believe the witness's testimony.

In *State v. Thomas*, 08-813 (La. App. 5 Cir. 4/28/09), 13 So.3d 603, *writ denied sub nom. State ex rel. Thomas v. State*, 09-1294 (La. 4/5/10), 31 So.3d 361, the defendant averred that the evidence was insufficient to support his conviction for armed robbery because a witness's testimony was not supported by the evidence and was inconsistent. Specifically, those inconsistencies pertained to who was present during the incident and the description of the gun used. This Court stated that even assuming these discrepancies were not explained, they went to the credibility of the witness, which is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *Id.* at 607. This Court further explained that the witness's testimony was corroborated by another witness's testimony. This Court concluded that the evidence was sufficient. *Id.*

Here, the evidence presented was sufficient under the *Jackson* standard to show that Defendant committed armed robbery. Defendant contends that Connor's

testimony was contradicted by physical evidence. He specifically asserts that the pictures of Connor's face after the incident do not show bruises from being hit across the face with the gun. However, the photographs of Connor's face were viewed by the jury and they apparently found his testimony credible. Further, the State did not have to prove beyond a shadow of a doubt that Connor was struck in the face with the firearm in order for the jury to find that Defendant committed an armed robbery. Defendant avers that Connor testified that he did not have drugs but Connor actually had a bag of marijuana taken from his apartment -- the jury heard that testimony also. The jury made a credibility determination and found the evidence as to the armed robbery believable. Defendant suggests that Connor willingly paid off his drug debt, but the record supports a conclusion that he and Jhon used force and intimidation to collect on the debt owed to Jhon. *See Jackson*, 55 So.3d at 772.

Further, Defendant's assertion that Connor's testimony was uncorroborated is incorrect. Connor testified that a gun was used and identified a picture of the gun used during the robbery. A gun was found in Defendant's vehicle three days after the offense. Connor testified that Defendant and Jhon took various items from his home, and a laptop and pill bottles with his mother's name on them from her home – police found those items in Defendant's green Toyota 4Runner a few days after the armed robbery. Additionally, photographs from the bank corroborated Connor's testimony that he and two individuals took his vehicle to the bank on the morning of November 15, 2019. The ALPR system tracking of Connor's vehicle also corroborated his statements. Photographs from the ALPR system tracking Defendant's vehicle showed it followed Connor's vehicle and was in the vicinity of his workplace and apartment.

In conclusion, we find that the State sufficiently proved that Defendant committed armed robbery. The State established that various items were taken

from Connor's apartment. Further, he withdrew hundreds of dollars from an ATM, which he gave to Defendant. The jury accepted the evidence that Defendant had a gun that was used to force Connor to cooperate, along with one of his own knives. The jury's finding that Defendant committed armed robbery is permissibly supported by the testimony of one witness that is free of internal contradictions or conflict with physical evidence. *Sly*, *supra*. Any other inconsistencies found in Connor's testimony in comparison with the other evidence presented goes to the weight of the evidence and not its sufficiency. *See State v. Cole*, 15-358 (La. App. 5 Cir. 12/23/15), 182 So.3d 1192, 1199, *writ denied*, 16-179 (La. 2/10/17), 215 So.3d 700. Appellate courts have found that it is within the jury's discretion to credit the testimony of witnesses who initially lied to the police, perjured themselves during motion hearing, and gave inconsistent accounts about details of the crime. *See Cowart*, 815 So.2d at 284-85. The jury may even accept or reject, in whole or part, the testimony of a witness who provided inconsistent accounts regarding the number of people present during an incident, or the description of the weapon used. *See Thomas*, 13 So.3d at 607. Considering the foregoing, this assignment of error lacks merit.

## RIGHT TO CONFRONT ACCUSERS AND CO-DEFENDANT'S INVOCATION OF FIFTH AMENDMENT PRIVILEGE ON THE WITNESS STAND

Defendant contends that the judge erroneously allowed the State to ask Jhon multiple questions that added weight to its weak case despite his refusal to answer questions. He avers that the State anticipated that Jhon would refuse to answer questions as it requested that he be appointed an attorney prior to taking the stand. He argues that his Sixth Amendment rights to confrontation and due process were violated by the State's repeated improper questioning of Jhon concerning his alleged confession implicating Defendant.

In response to the prosecutor's initial questions, Jhon stated his name and acknowledged that he was in prison because he pled guilty to charges involving the kidnapping and armed robbery of Connor, the burglary of Connor's mother's home, and drug charges. He agreed that he was sentenced to "fifteen years for the armed robbery, kidnapping, and simple burglary, and then twenty years on the drugs." The prosecutor then asked Jhon if he and Defendant went into Connor's apartment to get his money he was owed from the prior drug deal. At that time, Jhon stated he was pleading "the Fifth." The judge informed Jhon that because he already pled guilty, he did not have a Fifth Amendment privilege, and ordered him answer the questions.

After a bench conference outside of the presence of the jury, the judge permitted the prosecutor to treat Jhon as a hostile witness. Jhon continued to refuse to answer any of the State's questions.

The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. Additionally, the Confrontation Clause of the Louisiana Constitution directly affords the accused the right to "confront and cross-examine the witnesses against him." La. Const. art. I, § 16; *State v. Shorter*, 23-128 (La. App. 5 Cir. 11/29/23), 377 So.3d 421, 432, *writ denied*, 23-1669 (La. 5/29/24), 385 So.3d 704. The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. *State v. Bell*, 23-85 (La. App. 5 Cir. 10/31/23), 374 So.3d 986, 997. Cross-examination is the principal means by which believability and truthfulness of testimony are tested and the cross-examiner has traditionally been allowed to impeach, or discredit, the witness. *Id.*

Although defense counsel objected to every question the prosecution asked Jhon besides the inquiry about his convictions and sentences, the defense never objected at trial on the Confrontation Clause argument he now raises for the first

time on appeal. To preserve the right to seek appellate review of an alleged trial court error, a party must state an objection contemporaneously with the occurrence of the alleged error as well as the grounds for that objection. *See* La. C.Cr.P. art. 841; *State v. Anthony*, 17-372 (La. App. 5 Cir. 12/30/20), 309 So.3d 912, 927, *writ denied*, 21-176 (La. 10/12/21), 325 So.3d 1067, *cert. denied*, -- U.S. --, 143 S.Ct. 29, 214 L.Ed.2d 214 (2022). In failing to object at trial, Defendant waived the issue for appellate review. *See State v. Otkins-Victor*, 15-340 (La. App. 5 Cir. 5/26/16), 193 So.3d 479, 533, *writ denied sub nom. State ex rel. Otkins-Victor v. State*, 16-1495 (La. 10/15/18), 253 So.3d 1294 (This Court explained that for the first time on appeal, the defendant argued that her Sixth Amendment right to confrontation was violated by her inability to cross-examine the coroner and that she never raised the issue that she was denied her right to confrontation by the coroner's failure to testify; thus, the issue was not properly preserved for appeal.).

Further, Confrontation Clause violations do not fit within the limited category of constitutional errors that are deemed prejudicial in every case—the violation of a defendant's right to confrontation may constitute harmless error. *Sly*, 376 So.3d at 1076. The factors to be considered in determining whether the error was harmless include the importance of the testimony of the witness in the State's case, whether the testimony is cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of the cross-examination permitted, and the overall strength of the State's case. *State v. Mullins*, 14-2260 (La. 1/27/16), 188 So.3d 164, 171-72. Even if Defendant's right to confrontation was violated by the State's presentation of Jhon as a witness while (improperly) exercising his Fifth Amendment right against self-incrimination, the cumulative nature of the unanswered questions compared to the other evidence presented, and the overall strength of the State's case rendered any error caused by the

confrontation issue harmless. Further, the instructions the trial court provided to the jury prior to deliberation explained that attorneys' statements are not evidence.

## SUFFICIENCY OF PROOF OF PRIOR FELONY CONVICTION

Defendant argues that because the State failed to call an expert to establish a sufficient link between him and his alleged prior conviction, his habitual offender adjudication and sentence must be vacated.

In this case, on September 7, 2023, the State filed a multiple bill wherein it alleged that Defendant was previously charged in case number 18-FELN-037021 in section "E" in the 21st Judicial District Court in Livingston Parish for violating La. R.S. 40:966(A), possession of marijuana with intent to distribute. The State provided that Defendant pled guilty as charged in that case on February 4, 2019, and was sentenced that day to five years imprisonment at hard labor. The State said the sentence was suspended and that Defendant was placed on two years of active probation.

At a hearing on September 7, 2023, the prosecutor offered into evidence a transcript from the Livingston Parish case and a reporter's certificate showing that Defendant pled guilty to the Livingston Parish charge. Defense counsel replied, "Well, I'm sure they have some proof that somebody named -- someone pled guilty. I don't know how they're going to prove it's the gentleman sitting in the box." The prosecutor then explained that she was offering into evidence certified records from a hearing in Livingston Parish from February 4, 2019, where Defendant pled guilty to possession with intent to distribute marijuana. Also, she offered into evidence a certified copy of his pen pack. The judge asked if there were fingerprints on the pen pack, and the prosecutor answered affirmatively. The judge then asked if she was going to call a fingerprint expert. The prosecutor explained that because the fingerprints were insufficient to determine a match, she

obtained the transcript. Defense counsel objected, and the exhibits were admitted into evidence.

Defense counsel expressed that he had never seen anyone do a multiple bill without a fingerprint expert. He opined that in almost every case, a fingerprint expert is called to testify. Counsel voiced concern for the admissibility of the transcript without a witness. He questioned how they could know that the individual listed in the transcript was the present Defendant. Counsel argued, "And I would submit to you that the -- I would object to the entirety of this, one, because how do we know this is the Landon Rogers sitting here. It could be any person named 'Landon Rogers.' They have submitted no witnesses." Counsel posited that in previous cases where the fingerprints were not sufficient, a person from the prior case such as the judge, prosecutor, or defense attorney was called as a witness. He concluded that they did not know that the person described by the paperwork was Defendant.

The prosecutor provided that the pen pack showed that Landon Rogers had a 2019 conviction and that it contained insufficient fingerprints. She explained, "A creative way to get around that was to get the transcript of him pleading guilty voluntarily to that conviction, and that is the reason for the court-certified transcript and the pen pack." The prosecutor argued that Defendant sat before the judge for months and that the judge knew his birthday and name, which were consistent with the pen pack and the waiver of rights in the transcript. The judge took the matter under advisement.

At a hearing on September 12, 2023, the judge asked defense counsel if he had anything to say, and counsel replied that for appeal purposes, he objected. He then stated he also objected to the timeliness of the filing of the multiple bill. The judge explained that he had a transcript from the prior conviction in Livingston Parish and a pen pack. The judge referenced La. R.S. 15:529.1(F) in finding that

the pen pack was "admissible as further proof." The judge cited *State v. Wade*, 22-260 (La. App. 5 Cir. 2/27/23), 358 So.3d 937. He explained that while there were no fingerprints in the instant case, the State used other methods of evidence to prove Defendant's identity. The judge provided that he had a name, birthday, and social security number in the pen pack. He mentioned that a specific type of evidence was not required and that the transcript and pen pack were sufficient to prove that Defendant was the same person convicted in the prior offense. The judge then adjudicated Defendant a second-felony offender.

To prove that a defendant is a habitual offender, the State must establish by competent evidence the defendant's prior felony convictions and that defendant is the same person who was convicted of the prior felonies. *State v. Celestine*, 20-170 (La. App. 5 Cir. 11/4/20), 306 So.3d 579, 587. Additionally, the State bears the burden of proving that the predicate convictions fall within the "cleansing period" prescribed by La. R.S. 15:529.1(C). *Wade*, 358 So.3d at 941. Once the State establishes a prior felony conviction, then it must offer proof that the accused is the same person who was convicted of the prior felony. *State v. Castillo*, 13-552 (La. App. 5 Cir. 10/29/14), 167 So.3d 624, 647, *writ denied sub nom. State ex rel. Castillo v. State*, 14-587 (La. 11/7/14), 152 So.3d 172, and *writ denied*, 14-2567 (La. 9/18/15), 178 So.3d 145. The defendant's identity may be shown by a variety of methods, including the testimony of witnesses, fingerprint analysis by an expert, photographs in a duly authenticated record, or evidence of identical driver's license number, social security number, sex, race, and date of birth. *Wade*, *supra*. Merely establishing that the defendant's name and that of the person previously convicted are the same is not sufficient evidence of identity under La. R.S. 15:529.1. *State v. Murphy*, 09-805 (La. App. 5 Cir. 2/23/10), 34 So.3d 886, 889, *writ denied*, 10-690 (La. 10/15/10), 45 So.3d 1110. The State is not required to use a specific type of evidence. *Id*.

In *State v. Westbrook*, 392 So.2d 1043, 1045 (La. 1980), which involved a conviction for driving while intoxicated ("DWI"), the Louisiana Supreme Court found that documentation of the defendant's name, driver's license number, sex, race, and date of birth was sufficient evidence for the State to carry its burden of proving that the defendant was the same person previously convicted of a DWI. *See also State v. Neville*, 96-137 (La. App. 4 Cir. 5/21/97), 695 So.2d 534, *writ denied*, 97-1637 (La. 12/12/97), 704 So.2d 1180; *State v. Henry*, 96-1280 (La. App. 4 Cir. 3/11/98), 709 So.2d 322, *writ denied sub nom. State ex rel. Henry v. State*, 99-2642 (La. 3/24/00), 758 So.2d 143 (where the defendants were adjudicated multiple offenders, and the appellate court found that sufficient proof of identity was established despite the lack of photographs or fingerprints).

Here, the State admitted into evidence a pen pack for the prior offense in Livingston Parish for possession with intent to distribute marijuana, as well as a master record and arrest information relating to Defendant's current armed robbery conviction. The defendants in both cases are white males, have the same date of birth, same address, same social security number, and same state identification or SID number. In addition, a suspect rap sheet for the prior conviction contains a photograph, which appears to show the same individual that the victim selected from a lineup in the instant case.

Because the name, race, date of birth, address, social security number, and state identification number are the same between Defendant and the person that previously pled guilty to possession of marijuana with intent to distribute on February 4, 2019, we find the State sufficiently established that the individuals were one and the same. Further, the photographs reflect the same individual. Thus, we find the district court did not err in adjudicating Defendant a second-felony offender.

REVIEW OF EXCESSIVE SENTENCE CLAIM

A "defendant should be sentenced in accord with the version of La. R.S. 15:529.1 [the multiple offender statute] in effect at the time of the commission of the charged offense." *State v. Barnes*, 23-208 (La. App. 5 Cir. 12/27/23), 379 So.3d 196, 204 n.6. At the time of the offense, La. R.S. 15:529.1(A)(1) provided that if the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction. As such, the enhanced sentencing range was thirty-three years to one hundred ninety-eight years.

La. C.Cr.P. art. 881.1(B) provides that a motion for reconsideration of sentence "shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based." La. C.Cr.P. art. 881.1(E) provides that "[f]ailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." This Court has held that when the specific grounds for objection to the sentences, including alleged non-compliance with La. C.Cr.P. art. 894.1, are not specifically raised in the trial court, then these issues are not included in the bare review for constitutional excessiveness, and the defendant is precluded from raising these issues on appeal. *State v. Kelson*, 23-274 (La. App. 5 Cir. 12/27/23), 379 So.3d 779, 784.

Where a new sentence has been imposed following vacation of a prior sentence, the defendant is required to file a new motion for reconsideration of sentence in the trial court, in order to preserve appellate review of the newly-

imposed sentence. *State v. Robinson*, 11-12 (La. App. 5 Cir. 12/29/11), 87 So.3d 881, 912, *writ denied*, 12-279 (La. 6/15/12), 90 So.3d 1059. The court cannot assume that the defendant's objections to the earlier sentence are equally applicable to the new sentence imposed. *Id.* Because Defendant did not file a new motion for reconsideration of his enhanced sentence with specifically alleged grounds for objection, he is not entitled to a review of whether the trial court complied with La. C.Cr.P. art. 894.1, and this Court is limited to a review of his sentence of seventy years imprisonment for constitutional excessiveness.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Article I, § 20 of the Louisiana Constitution also prohibits cruel and unusual punishment but further explicitly prohibits excessive punishment. *State v. Ervin*, 23-11 (La. App. 5 Cir. 8/30/23), 370 So.3d 1236, 1245, *writ denied*, 23-1336 (La. 4/9/24), 382 So.3d 816. A sentence is considered excessive, even when it is within the applicable statutory range, if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. *Id.* A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *Barnes*, 379 So.3d at 204.

The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); *State v. Corea-Calero*, 22-117 (La. App. 5 Cir. 12/28/22), 355 So.3d 697, 701. On appeal, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Lasalle*, 22-577 (La. App. 5 Cir. 8/18/23), 370 So.3d 521, 531.

In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the

offender; and 3) the sentence imposed for similar crimes by the same court and other courts. *Id* at 532. However, there is no requirement that specific matters be given any particular weight at sentencing. *State v. Bridgewater*, 22-517 (La. App. 5 Cir. 4/26/23), 362 So.3d 998, 1010. An appellate court cannot set aside a sentence as excessive absent a manifest abuse of discretion. *Id*.

As to the first factor, the nature of the crime, the Louisiana Supreme Court has recognized that armed robbery "is a pernicious offense" which "creates a great risk of emotional and physical harm to the victim, to witnesses, and, at times, even to the offender." *State v. Robinson*, 22-310 (La. App. 5 Cir. 4/12/23), 361 So.3d 1107, 1116 (citing *State v. Celestine*, 12-241 (La. 7/2/12), 92 So.3d 335, 337 (*per curiam*)); *State v. Ross*, 13-924 (La. App. 5 Cir. 5/28/14), 142 So.3d 327, 334. This Court has also stated that armed robbery is a "serious offense against the person." *Robinson*, 361 So.3d at 1116.

In the instant matter, Defendant and Jhon went to Connor's place of work before ultimately following him home from a different bar in the early morning hours to collect a debt owed to Jhon for drugs. The evidence at trial indicated that Defendant was armed with a loaded gun, which was used to hit the victim in the face several times and held to the back of the victim's head, and that a knife may also have been used. Defendant and Jhon held the victim on his couch while they searched his apartment for drugs and money. The victim drove Defendant and Jhon to the bank and his mother's home in search of money and/or drugs. The victim stated that at some point, he was duct taped and also forced to undress, and ridiculed. The victim testified that he was terrified during the encounter.

As to the nature and background of the offender, Defendant was approximately twenty-six years old at the time of the offense in 2019. At sentencing, the State asserted that Defendant had five prior convictions for burglaries, possession with intent to distribute marijuana, and felony theft from

2012, 2013, and 2019. The judge specifically mentioned Defendant's prior convictions in sentencing Defendant and stated that he did not think Defendant could be reformed. The judge further acknowledged that while the jury did not convict Defendant of the other crimes, the judge believed Defendant was guilty of the kidnapping and burglary.

The third factor requires consideration of sentences imposed for similar crimes by this Court and other courts. This Court and other courts have upheld similar and longer sentences for defendants convicted of armed robbery and adjudicated second-felony offenders. In fact, similar sentences have been upheld for defendants that were not multiple billed. *See State v. Williams*, 04-697 (La. App. 5 Cir. 11/30/04), 889 So.2d 1135, *writ denied*, 05-395 (La. 5/13/05), 902 So.2d 1017; *State v. Billiot*, 13-1188 (La. App. 3 Cir. 4/2/14), 135 So.3d 1267, *writs denied*, 14-936 (La. 11/26/14), 152 So.3d 902, and 14-949 (La. 11/26/14), 152 So.3d 903; *State v. Reado*, 12-409 (La. App. 1 Cir. 11/2/12), 110 So.3d 1082; *State v. Byrd*, 491 So.2d 87 (La. App. 3 Cir. 1986), *writ denied*, 506 So.2d 1219 (La. 1987).

In *State v. Callier*, 39,650 (La. App. 2 Cir. 7/27/05), 909 So.2d 23, *writ denied*, 06-308 (La. 9/1/06), 936 So.2d 196, the defendant was convicted of three counts of armed robbery and adjudicated a second-felony offender. The defendant faced a sentencing exposure of forty-nine and a half years to one hundred ninety-eight years at hard labor without benefits for armed robbery as a second-felony offender. *Id*. at 34. The trial court found that there was an undue risk that the defendant would commit another offense if placed on probation or given a suspended sentence. The court determined that the defendant was in need of correctional treatment and that a lesser sentence would deprecate the seriousness of the offense. The court observed that the defendant had a long criminal history despite his youth, including crimes of violence and crimes against the person. In

mitigation, the trial court noted that the gun used in the robbery was not fired and that no one was physically injured. *Id*. at 35. The enhanced sentence of seventy years imprisonment was upheld.

In *State v. Billingsley*, 13-11 (La. App. 3 Cir. 10/9/13), 123 So.3d 336, the defendant, who was convicted of armed robbery and armed robbery with a firearm and adjudicated a second-felony offender, faced a sentencing range of forty-nine and a half years to one hundred ninety-eight years at hard labor. The trial court imposed a sentence of seventy years at hard labor without benefit of parole, probation, or suspension of sentence. The third circuit explained that the defendant held a gun to one victim's head while an accomplice did the same to the other victim. The court upheld the sentences. *Id*. at 344.

In *State v. Carroll*, 41,001 (La. App. 2 Cir. 4/12/06), 926 So.2d 827, *writ denied*, 06-1470 (La. 12/15/06), 944 So.2d 1283, the defendant was convicted of armed robbery and adjudicated a second-felony offender. On appeal, he argued that his seventy-five-year sentence was excessive. The applicable sentencing range for a second-felony offender convicted of armed robbery was forty-nine and a half years to one hundred ninety-eight years at hard labor without benefits. The trial court found that there was an undue risk that the defendant would commit another crime. The court also observed that the defendant was in need of correctional treatment and that any lesser sentence would deprecate the seriousness of his crime. The court commented that the defendant showed no remorse for his conduct. The court took into consideration the victim's statement and concluded that this violent offense against the victim caused serious emotional trauma for her and her family. The second circuit found that the sentence was not excessive. *Id*. at 830.

In *State v. Gipson*, 37,132 (La. App. 2 Cir. 6/25/03), 850 So.2d 973, 980, *writ denied*, 03-2238 (La. 1/30/04), 865 So.2d 75, the defendant, as a second-

felony offender, faced an enhanced sentencing range for his armed robbery conviction of forty-nine and a half years to one hundred ninety-eight years at hard labor without benefits. The trial court sentenced the defendant to seventy-five years at hard labor without benefits. The defendant was actually a third-felony offender with two previous, multiple-count armed robbery convictions. The trial court stated that the defendant needed correctional treatment and that a lesser sentence would deprecate the seriousness of the offense. The trial court also found aggravating circumstances such as the fact that the defendant used a dangerous weapon during the commission of the crime, he used threats of or actual violence during the commission of the crime, and he made threats on the lives of the victims. The appellate court concluded that the record supported the sentence. *Id*. at 981.

In *State v. Roshell*, 42,398 (La. App. 2 Cir. 9/26/07), 966 So.2d 770, the defendant was sentenced to eighty years imprisonment as a second-felony offender after being convicted of armed robbery. The second circuit upheld the sentence. In *State v. Bruce*, 10-121 (La. App. 5 Cir. 11/9/10), 54 So.3d 87, *writ denied*, 10-2756 (La. 4/29/11), 62 So.3d 109, the defendant was convicted of armed robbery and adjudicated a second-felony offender. The defendant's prior offenses included a felony conviction for simple burglary in 2007, two simple robbery convictions in 1989 in which he robbed the same victim on two separate occasions, and another conviction for burglary of an inhabited dwelling. This Court upheld his enhanced sentence of one hundred years imprisonment. *Id*. at 98. *See also State v. Leday*, 11-1022 (La. App. 5 Cir. 6/28/12), 97 So.3d 501, *writ denied*, 12-1765 (La. 3/1/13), 108 So.3d 788, where this Court found that a one-hundred-year-sentence for armed robbery as a second-felony offender was not excessive, especially in consideration of the fact that the defendant placed the victim at risk of death or great bodily harm when he held a knife to the victim's neck.

Considering the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes by this Court and other courts, we cannot find that the enhanced sentence imposed was unconstitutionally excessive. Also, Defendant's enhanced sentence of seventy years was just over a third of the longest sentence that could have been imposed. Additionally, while Defendant mentions that the judge did not order a PSI, the law does not provide an absolute right to a PSI report. Rather, a PSI report is an aid to the trial court and is ordered at its discretion. *See* La. C.Cr.P. art. 875; *Ervin*, 370 So.3d at 1247.

Further, while co-defendants convicted of the same crime need not be sentenced equally, even where the co-defendants come from similar backgrounds and might be similar in other respects, disparity of sentences is another factor to be weighed by this Court in assessing an excessiveness claim. *See State v. Smith*, 433 So.2d 688, 698 (La. 1983). Here, the record is unclear, but according to the State's brief and the district court, Jhon had no prior convictions. Also, Jhon pled guilty, while Defendant proceeded to trial. Therefore, Defendant's argument regarding the disparity in Jhon's and Defendant's sentences lacks merit – it is clear from the record that the district court was disturbed by the details of what Connor endured during those early morning hours of November 15, 2019. Further, there is no requirement that co-defendants be sentenced equally. *State v. Napoleon*, 01-1222 (La. App. 5 Cir. 2/26/02), 811 So.2d 980, 984.

Finally, Defendant, citing *State v. Harris*, 18-1012 (La. 7/9/20), 340 So.3d 845, argues that he received ineffective assistance of counsel during sentencing because his counsel failed to provide evidence of mitigating factors in his case. Defense counsel did not file a sentencing memorandum, call any witnesses at sentencing, or present arguments at the sentencing hearing. A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. *Gatson*, 334

So.3d at 1039. To prove ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *State ex rel. Stevenson v. Hooper*, 21-692, 2022 WL 189730 (La. App. 5 Cir. 1/20/22), *writ denied*, 22-370 (La. 5/24/22), 338 So.3d 1193. Under the *Strickland* test, the defendant must show: (1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. *Fisher v. State*, 21-718, 2022 WL 98173 (La. App. 5 Cir. 1/10/22), *writ denied*, 22-246 (La. 2/7/23), 354 So.3d 671. An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." *State v. Robinson*, 23-277 (La. App. 5 Cir. 6/28/23), 368 So.3d 737, 742, *writ denied*, 23-1042 (La. 12/5/23), 373 So.3d 979. To prove prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. *Id.*

Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. *State v. Bethune*, 21-25 (La. App. 5 Cir. 11/10/21), 330 So.3d 1236, 1246. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. *Id.*

A basis for ineffective assistance of counsel may only be found if a defendant can "show a reasonable probability that but for counsel's error, his sentence would have been different." *State v. Allen*, 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 879. Defendant argues that the following mitigating factors existed but were not presented at sentencing: Defendant's past criminal history is non-violent and related to past substance abuse struggles; he is from a

supportive family; his parents were married for thirty-five years; he was married with two children; he was an honor graduate from the Youth Challenge Program; and he was employed as a plumber and logger before his arrest.

A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion when imposing a sentence. *State v. McMillan*, 23-317 (La. App. 5 Cir. 12/27/23), 379 So.3d 788, 802. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. *Id.* The review of sentences under La. Const. art. 1, § 20 does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is most appropriate in a given case. *Corea-Calero*, 355 So.3d at 701. While in the instant case the predicate offense was non-violent, the instant offense is categorized as a crime of violence. In light of the prior analysis regarding Defendant's sentence and the factors the district court considered before sentencing client, we find that Defendant has failed to demonstrate a reasonable probability that his sentence would have been different had trial counsel presented the mitigatory factors presented on appeal, considering that he received a sentence of only seventy years when he faced a maximum sentence of one hundred ninety-eight years. Accordingly, we find that the ineffective assistance of counsel claim is without merit.

## ERRORS PATENT

The record was reviewed for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990).

The sentencing minute entries for January 27, 2023 and the September 12, 2023 state that "the Court informed the Defendant he has … two (2) years after judgment of conviction and sentence has become final to seek post-conviction

relief." However, the sentencing hearings' transcripts do not reflect that the court advised Defendant of the time limits for applying for post-conviction relief. The transcript prevails where there is an inconsistency between the minute entry and the transcript. *State v. Mejia,* 23-161 (La. App. 5 Cir. 11/29/23), 377 So.3d 860, 892, *writ denied*, 23-1722 (La. 5/29/24), 385 So.3d 705 (citing *State v. Lynch*, 441 So.2d 732, 734 (La. 1983)).

If a trial court fails to advise, or provides an incomplete advisal, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief under La. C.Cr.P. art. 930.8 by means of its opinion. *State v. Becnel*, 18-549 (La. App. 5 Cir. 2/6/19), 265 So.3d 1017, 1022. Accordingly, the Court advises Defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. *Id.*; *See State v. Key*, 23-167 (La. App. 5 Cir. 12/27/23), 379 So.3d 96, 127.

## *DECREE*

Considering the foregoing, Defendant's conviction for armed robbery in violation of La. R.S. 14:64 and enhanced sentence of seventy years imprisonment without the benefit of parole, probation, or suspension of sentence are affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **AUGUST 28, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-558

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
ANDREA F. LONG (APPELLEE)          DARREN A. ALLEMAND (APPELLEE)          MONIQUE D. NOLAN (APPELLEE)
THOMAS J. BUTLER (APPELLEE)        JANE C. HOGAN (APPELLANT)

### MAILED
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
CAROLYN CHKAUTOVICH (APPELLEE)
KRISTEN LANDRIEU (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053